[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 550.]

CINCINNATI BAR ASSOCIATION *v.* ALLEN.

[Cite as *Cincinnati Bar Assn. v. Allen*, 1998-Ohio-188.]

*Attorneys at law—Complaint of misconduct dismissed.*

(No. 97-2675—Submitted May 27, 1998—Decided August 5, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 97-42.

———————————

*Peter W. Swenty, Thomas R. Smith* and *Edwin W. Patterson III,* General
Counsel, Cincinnati Bar Association, for relator.

*Doris Houser Allen, pro se.*

———————————

{¶ 1} *Sua sponte*, the complaint is dismissed.

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ.,
concur.

MOYER, C.J., and COOK, J., dissent.

———————————

**Moyer, C.J., dissenting.**

{¶ 2} I respectfully dissent from the decision of the majority that rejects the
recommendation of the Board of Commissioners on Grievances and Discipline and
dismisses the complaint against respondent Allen. This matter arose out of a
complaint initiated by the Hon. Mark R. Schweikert, Judge of the Hamilton County
Municipal Court, regarding a proceeding in his courtroom. Sylvia Huff was
concerned for the safety of herself and three of her children. Her estranged
boyfriend and father of these children, Dwayne Harris, had been recently released
from jail and had stopped by the children's school to give his son a birthday gift.
Huff was frightened that Harris would learn her residence address and that he might

take the children from school without her permission, so she hired Allen to represent her in an attempt to keep Harris from accessing the children.

{¶ 3} Allen dictated an affidavit that contained admitted false statements against Harris and vouched for a criminal complaint that she helped Huff to file. The false affidavit led to the arrest and incarceration of Harris, and when, at Harris's hearing, Huff admitted that the affidavit contained false allegations the prosecutor told her that "she could be brought up on charges for filing * * * [a] false statement."

{¶ 4} Allen participated in filing a false affidavit despite her client's objections that the affidavit was untrue. Allen dictated and encouraged Huff to sign an affidavit that said, in relevant part, that Harris, "recently released from penitentiary on charge of felonious assault with gun spec. appeared twice [at Huff's children's school] and threatened [Huff] and [her] three small children." Additionally, the affidavit stated that Harris "is armed and dangerous" and that Huff feared for her children's safety and her children were afraid to go to school.

{¶ 5} Allen admits that she dictated the exact language of the affidavit to Huff; that the statements regarding Harris's visit to the school, as well as the allegation that he was armed and dangerous, were untrue at the time of the affidavit; and that she was aware that they were untrue at that time. Huff said that she questioned the content of the affidavit as Allen dictated it to her and that she told respondent that these events "did not take place. And I kept saying this did not take place. * * * [But] when I told her that this did not take place, she's like 'Do you want to get custody of your children?', [so I signed it]."

{¶ 6} Huff further indicated that she did not know she was filing criminal charges against Harris. "I thought it was a paper that I was signing to help me get custody of my children. I did not know it was something criminal at all." In fact, when Huff found out that Harris was in jail, Huff called Allen and said, "I want you there, * * * because it's wrong. He shouldn't be in jail."

**{¶ 7}** During her hearing Allen admitted, "I did it.  I helped this lady, I vouched for a criminal complaint and I shaded the facts, because it's necessary to do that on a criminal complaint."  "[I]t was a mistake to have done it, and I did have to—we did have to lie in it, because we had to put a specific date for the threat on there.  But I believed * * * she was afraid, I believed that she needed protection * * *."  Additionally, Allen said, "It was a perjury, [but] my motives were pure, and that's all."

**{¶ 8}** The respondent argues, and I agree, that attorneys should not be held liable for previous false statements made by their clients.  An attorney, when assisting a client with the preparation and filing of an affidavit, should not be punished for believing the facts presented by the client.  In this case, the client clearly had expressed to Allen that she was afraid of what Harris might do and that he had, prior to his incarceration, taken the children without her knowledge and that he had been abusive.  Clearly, there are situations that will arise, especially in the context of domestic relations cases, where a client may reconcile with an adversarial family member and recant his or her previous statements and concerns.  However, this case is not one of those situations.  The record is clear that Allen knew at the time she participated in the creation and filing of the affidavit that it contained false allegations.  Allen has repeatedly admitted this fact on the record.  Thus, we are not faced with a mere dispute over a client's credibility.

**{¶ 9}** Huff's original presentation of facts to Allen was not entirely consistent and did not clearly set forth the time frame in which events had occurred.  It is, therefore, not inconceivable that during their original meeting and phone conversation, Allen may have believed that Harris had recently threatened Huff.  However, the record is clear that at the time Allen dictated the affidavit and before the criminal complaint had been filed and Allen had vouched for it, Huff had told Allen that the facts in the affidavit were false.  Rather than taking a moment to clarify what really had happened, Allen, impatient because Huff's statements

seemed to be inconsistent, simply threatened to withdraw from the case and implied that if Huff continued to question the details and did not sign what Allen had dictated, Huff would lose her children.

{¶ 10} "And I told her, I said, 'Look, the money is paid into the firm. I've spent the time. This is the only protection I can offer you. If you don't want to sign, don't sign. It's nothing to me. But you called me again and again. You told me, "He threatened me." You told me you were afraid. You told me he would steal your children. Now, is that suddenly not true?' * * * Now, down at the clerk's office they want a specific day she was threatened * * *. I said, 'So say the day you saw him.'

"[Huff said] 'But he didn't threaten me.'

"I said * * * 'Are you threatened by him? Do you feel threatened? Aren't you afraid he's going to come to your house? Is that true or not, Ms. Huff? Because it's nothing to me but there won't be any refunds, and that's reality.' So she signed the complaint."

{¶ 11} Allen may have believed that she was advancing her client's interest by adding misrepresentations to the affidavit, but Allen was not misled into believing those statements to be true. An attorney ought to be able to distinguish between a client who says she feels threatened generally and a client who is being criminally threatened by a person who is armed and dangerous on a specific date. Huff never told Allen that Harris had threatened her or the children since his release from the penitentiary. We may all sympathize with a client who is intimidated by a past abuser, but we cannot condone the fabrication of current facts in support of a new charge of violence when no new violence has occurred.

{¶ 12} Allen is an officer of the court and this court should not excuse the fact that she knowingly participated in the creation and filing of a false affidavit in a court proceeding, and that her misrepresentations resulted in the arrest and incarceration of Harris.

**{¶ 13}** The Code of Professional Responsibility states in DR 1-102(A)(4) that "a lawyer shall not * * * [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Here, respondent clearly violated DR 1-102(A)(4) by participating in the creation and filing of a false affidavit. She admitted during her hearing that the statements made in the affidavit were untrue. This court recently stated:

"It is true that the vigorous and effective representation of a client is the responsibility of all attorneys. * * * While an attorney, as a zealous advocate, may characterize facts favorably to the attorney's client, the attorney's duty * * * is to uphold the legal process and demonstrate respect for the legal system by at all times being truthful with a court and refraining from knowingly making statements of fact or law that are not true. * * * The obligations of professional responsibility may not be overshadowed by either a desire to win a case or as a favor to any person." *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 16, 655 N.E.2d 1299, 1301.

**{¶ 14}** Respect for and the fair administration of our justice system cannot be sustained if lawyers are permitted to encourage and actively participate in misrepresentations to the court in order to "serve" the client. Dismissal of the complaint against the respondent here is the wrong message to the bar and the bench of this state. I would adopt the recommendation of the board and suspend respondent from the practice of law for six months.

COOK, J., concurs in the foregoing dissenting opinion.

_____